SARAH HURST, APPELLANT, v. SUSAN M. HARPER, AND OTHERS, RESPONDENTS.

*Land — consideration furnished by one and title taken by another.*

In March, 1858, one Wormer bid off certain real estate, as the agent of plaintiff; the deed was taken in the name of one Harper, who paid $800, and gave his bond and mortgage for $3.200, which was subsequently paid off by the plaintiff, who entered into possession of the premises and so remained until 1874, expending over $10,000 in improvements. In 1863, at plaintiff's request, Harper executed a mortgage covering the said premises and others to one L., for $5,000, the money being paid to plaintiff. Upon the foreclosure of this mortgage, a surplus of $8,000, arose. Harper, during his lifetime, admitted that he had no interest in the premises, and said that they belonged to the plaintiff. This action was brought to decide as to whether the $8,000 surplus belonged to the plaintiff or to the Harper estate.

*Held,* that as the title was taken in Harper's name, with the knowledge and consent of the plaintiff, and as there was no pretense that it was taken to secure any loan or advance by Harper, the plaintiff, by virtue of the provision of the Revised Statutes, acquired no interest in the land, nor in the surplus arising from the sale thereof.

APPEAL from a judgment in favor of the defendants, entered upon the report of a referee.

*Thomas B. Morrow* and *Nathaniel C. Moak*, for the appellant.

*J. E. Dewey*, for the respondents.

OSBORN, J.:

The findings of fact by the referee seem to be supported by the evidence, and the only question is, whether his conclusions of law arising upon such facts can be sustained.

In March, 1858, certain real estate situate in the county of Albany was bid off at public sale by one David Wormer, for the plaintiff. Instead of taking the title in her own name, the deed was taken in the name of Robert Harper. The consideration of the purchase was $4,000, and Harper paid $800 thereon and secured the balance by his bond and mortgage on said premises. Afterwards the plaintiff paid up such bond and mortgage, and the mortgage was duly satisfied of record. The plaintiff, from the time of the purchase by Wormer for her, paid and extinguished certain quit-rents due to Van Rensselaer upon a manorial

lease of the premises, and expended $10,000 or thereabouts in improvements and had the full and uninterrupted possession thereof up to January, 1874.

In June, 1863, Robert Harper executed a mortgage on this property and other real estate, to one Jarvis Lamoraux, for $5,000. This was done at plaintiff's request, and she had the money. In January, 1873, this mortgage was foreclosed. It brought $14,000, which made a surplus over and above the amount due on the mortgage and costs of $8,000. The purchaser, Rebecca Harris, instead of paying the $8,000, executed a bond and mortgage to defendant, county treasurer of Albany county, Nathan Wendell. In December, 1875, Wendell commenced a foreclosure on this mortgage given to secure the balance, viz., $8,000. The question now is, who is entitled to this surplus ? The plaintiff claims that she was really the owner of the property; that Harper had no interest therein, but simply held the title thereof for her benefit. Robert Harper died in 1870, intestate, leaving him surviving the defendant Susan M. Harper, his widow, and John Harper, George Harper, and the defendants Frank, Ira and Sarah J., his children and heirs at law. It appears from the evidence, and the referee so finds, that Harper stated frequently during his lifetime that he had no interest in the property which Wormer purchased for plaintiff; that he held the same for the benefit of the plaintiff and her family.

The referee finds that the mortgage of $5,000 to Lamoraux included other property than that bid off by Wormer for plaintiff, and what the amount or value of this was does not appear, or to what extent this outside property contributed to this surplus now claimed by the plaintiff, does not appear. Nor is it very material to the decision here that that should be known, for the referee holds that the plaintiff has no interest whatever in the surplus, but that it all belongs to the estate of Harper. Why the plaintiff should have directed the conveyance taken in Harper's name, does not appear; nor is there anything to show what agreement, if any, was made between her and said Harper in reference thereto. His declarations show that he held it for her benefit, and there is some evidence from which it may be inferred that it was to keep the property away from persons who may have had

demands against the plaintiff or her husband. Nor is there any evidence from which it can be inferred that the deed to Harper was in the nature of a mortgage, or as a security to him for any advancement or indebtedness. At least the referee does not so find, nor are there any requests that he should do so. Certainly as favorable a view of the facts for the plaintiff as the evidence would warrant, would be that she purchased and has really paid the consideration price of this property, but for some purpose not clearly defined, put the title in the hands of Mr. Harper. Under such circumstances, is she entitled to any interest in the surplus moneys on a sale under the mortgage given by Harper, and when he held the absolute fee and title thereto ?

The plaintiff asserts that she was not indebted to the said Harper in any sum whatever. Hence it cannot be claimed, as before stated, that he was holding the title as a security, or that the deed is to be regarded as a mortgage.

Allowing the plaintiff the full benefit of all she claims, it seems to me that our statute of uses and trusts prohibits the granting of any relief.

" Where a grant for a valuable consideration shall be made to one person, and the consideration thereof shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section." (1 R. S. [Edms. ed.], 677, § 51.) By section 52, " every such conveyance shall be presumed fraudulent as against the creditors, at that time, of the person paying the consideration." Section 53, " The provisions of the fifty-first section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration, or where such alienee, in violation of some trust, shall have purchased the lands so conveyed, with moneys belonging to another person."

It will be seen that the exceptions in sections 52 and 53 have no application here; no creditors are asserting any claims, and it is not pretended that what was done, was without the knowledge or consent of either plaintiff or Harper.

The theory of the action is that the plaintiff bought this property, and has paid for it with her own funds and money, but directed the conveyance to be taken in the name of Harper. True, the referee finds that Harper paid $800, and gave a mortgage for the balance, which plaintiff subsequently paid. If the plaintiff is to be held to her theory, the theory upon which the complaint was drawn, and case heard before the referee, I do not see how she can escape the effect of this statute. (*Everett* v. *Everett*, 48 N. Y., 218; *The Ocean Nat. Bk.* v. *Hodges*, 9 Hun, 161; *Porter* v. *Porter*, General Term decision, 2d department, and recently affirmed in Court of Appeals.)

The idea that Harper took the title because of any advancements that he made, or to secure any indebtedness, is directly in opposition to the claim of the complaint, nor can I find that any such intimation was made at the trial. (*Sturtevant* v. *Sturtevant*, 20 N. Y., 40.) The plaintiff avers that she bought, paid for and took the title in Harper's name, and that there is no indebtedness to Harper. Having brought and tried her action upon this theory, ought she now to change the nature of her claim, even though there may be some evidence to support the claim as changed? (*Arnold* v. *Angell*, 62 N. Y., 508; *Williams* v. *M. & F. Ins. Co.*, 54 id., 577; *Joslin* v. *Joslin*, 9 Hun, 388.)

If this statute is to be applied, it is very clear that the plaintiff can have no relief because of the large expenditure made by her for improvements, etc. There is no pretense of an agreement to reimburse her for such outlays and expenditures. She knew all about the title; that it was held by Harper, and her expenditures, etc., were as owner of the property, and not because she was to be compensated. (*Porter* v. *Porter*, General Term decision, 2d department, affirmed in Court of Appeals; *Kassel* v. *Becker*, 25 How., 377, 378.) But, assume for a moment that this statute does not apply, for the reason that the plaintiff did not pay the purchase money, or any part thereof, at the time of such purchase, but that Harper paid what was paid, and secured the balance by his own bond and mortgage. What interest has the plaintiff in this surplus which can be enforced? There is no evidence of any agreement to reconvey. There has been no writing of any kind creating or declaring any trust. True, she paid the mortgage

which had been given, but she subsequently received a large sum on the mortgage given to Lamoraux, and from the foreclosure of which this surplus was produced.

Even before the statute declaring some writing or declaration in writing necessary to create an estate or interest in, or any trust or power over or relating to, lands, it is by no means clear that the plaintiff had any interest which she could enforce. But certainly, since the statute, 2 R. S., [Edm. ed.], 139, § 6, Laws of 1860, chap. 322, it is difficult to see how she can obtain any relief, although there may be strong equities in her favor. (*Cook* v. *Barr*, 44 N. Y., 156; *Sturtevant* v. *Sturtevant*, 20 id., 39, 40; *Dillaye* v. *Greenough*, 45 id., 444; *Wheeler* v. *Reynolds*, 66 id., 227.) Even though it was clear that Harper purchased this property for her, and agreed to hold the same in trust for, and to convey to her, such agreement would be void by statute, and as well before as after the Revised Statutes. (*Church* v. *Kidd*, 5 T. & C., 455, BOCKES, J.; *Lathrop* v. *Hoyt*, 7 Barb., 62, and cases cited; 2 Story's Equity Juris., p. 611, § 1,201, note A.)

I have not thought it necessary to discuss the question thus presented, in view of another feature suggested by the evidence or findings, viz., that Harper was holding this property as a cover, or for a fraudulent purpose on the part of plaintiff or her husband, and, therefore, that equity will not relieve her.

It seems to me that, in any view of the case, the conclusions of the referee are right and should be affirmed.

Judgment affirmed with costs.

LEARNED, P. J., concurred; BOCKES, J., taking no part.

Judgment affirmed with costs.